Rota-Cone Oil Field Operating Company v. Commissioner. Municipal Securities Company v. Commissioner.
Rota-Cone Oil Field Operating Co. v. Commissioner
Docket Nos. 6808 and 6809.
United States Tax Court
1947 Tax Ct. Memo LEXIS 127; 6 T.C.M. (CCH) 892; T.C.M. (RIA) 47215; July 29, 1947
*127 L. Karlton Mosteller, Esq., George H. McElroy, Esq., First Nat. Bank Bldg., Oklahoma City, Okla., and Floyd J. Swingle, C.P.A., Midwest Bldg., Oklahoma City, Okla., for the petitioners. E. G. Sievers, Esq., and John P. Higgins, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies as follows: Rota-Cone
Municipal
1941
1942
1941
1942
Income tax
$2,861.48
$ 14.88
$1,825.78
$1,466.89
Declared value excess-profits tax
118.80
Excess-profits tax
7,171.68
24,493.90 The issues for decision are: 1. Whether the Commissioner erred in disallowing $3,190.93 of $4,400 claimed by Rota-Cone as a deduction for truck rental for 1942; 2. Whether Municipal is entitled to deduct losses from a gift shop for 1941 and 1942; 3. Whether the Commissioner erred in disallowing deductions to Municipal for 1941 and 1942 for salary of Tom L. Green, Sr. in excess of $6,000 for each year; 4. Whether amounts received by Municipal in 1941 were dividends from an insurance company or distributions in liquidation representing a return of capital; 5. Whether $15,000 for 1941 and $13,000 for 1942 of the income received by Rota-Cone is taxable to it or should be excluded from its *128 income as income belonging to two other joint venturers. Findings of Fact The petitioner, Rota-Cone Oil Field Operating Company, (called herein Rota-Cone), was organized as an Oklahoma corporation on September 30, 1937. It filed corporation returns for the years here in question with the collector of internal revenue for the district of Oklahoma. The petitioner, Municipal Securities Company, (called herein Municipal), once known as Allied Realty Investment Company, was organized in 1920 as a business trust under the laws of Oklahoma. It filed corporation returns for the years here in question with the collector of internal revenue for the district of Oklahoma. Green Engineering Company was organized in 1920 as a business trust under the laws of Oklahoma. Rota-Cone, Municipal, Green Engineering Co., and Lewis Supply Co. were closely associated at all times material hereto. The parties chiefly interested in their affairs were Tom L. Green, Sr., his son, his brother Joe, and S. O. Lewis. The Commissioner, in determining the deficiency for 1942 against Rota-Cone, disallowed $3,190.93 of a deduction described as "Truck rental expense" and gave the following explanation: "You claimed $4,400.00 *129 as rental of trucks hired from the Lewis Supply Company for the taxable year ended December 31, 1942. As you and the Lewis Supply Company were controlled by Tom Green, Sr., this item has been adjusted in accordance with the provisions of Section 45 of the Internal Revenue Code. The computation of theincrease to your net income as determined follows:" Truck rental charged to supply and
repair account
$4,000.00
Less: * Licenses, permits, etc.
$490.66
Federal Use Stamps
14.18
Allowable depreciation
704.23
1,209.07
Net adjustment
$2,790.93
Add: December accrual of rent
$ 400.00
Increase in net income
$3,190.93 S. O. Lewis, who by her marriage became S. O. Roach, began to work in 1924 for enterprises in which Tom L. Green, Jr., was interested, first as stenographer, later she also kept the books, and, finally, she did all of the office work. She did all of the office work and kept the books, all in thesame office, during 1941 and 1942 for Rota-Cone, Municipal, Green Engineering Company, and Lewis Supply Co. Lewis Supply Company is an Oklahoma corporation. S. O. Roach was an officer, but Tom L. Green, *130 Sr. was neither an officer not a stockholder of that corporation. R. Joe Green, president of Rota-Cone, bought a truck in January 1942 with funds of Rota-Cone. The cost of the truck was $2,363.31. It was driven by a driver employed by Rota-Cone. The expenses of the truck were paid by Rota-Cone. The books of Lewis Supply Company record payments of $863.31 on April 10, $500 on May 6, and $1,000 on June 10, 1942, to Rota-Cone on account of advances for the purchase of a tandem truck. The books of Lewis Supply Co. show a number of monthly credits of $400 for truck rental due from Rota-Cone and a notation showing that $350 was for rental of a tandem truck and $50 for a Dodge for one month. The record does not show what business, if any, was done by Lewis Supply Co. during 1942. The $3,190.93, disallowed, was not an ordinary and necessary expense of Rota-Cone for 1942. The Commissioner, in determining the deficiencies against Municipal, disallowed a deduction of $2,940.78 for 1941 and one of $1,906.53 for 1942, described as "gift shop loss". He explained that the losses were "personal expenses of your controlling stockholder, Tom Green, Sr." and not a deductible loss by the corporation. *131 Tom L. Green, Sr. had no separate bank account, but checks issued for his separate account by Municipal were charged to his drawing account on the books of Municipal. Tom L. Green, Sr. had to spend some time in Albuquerque, New Mexico, on business of Municipal. He opened a gift shop ther in rented space adjoining that used on behalf of Municipal. He intended that the gift shop should be a business for his daughter, who could also answer inquiries in regard to Municipal. All checks for the shop were issued by Municipal. The gift shop transactions were recorded in an account in Municipal's books headed "Albuquerque Gift Shop." It does not appear that Municipal ever authorized Green to enter into the gift shop business on its behalf or that it did not expect to be reimbursed by Green for the expenditures which it made. The business was not successful and the shop was closed in 1942. The record does not show that Municipal sustained any losses in 1941 or 1942 from the gift shop. The Commissioner allowed a deduction to Municipal of $6,000 in each year as salary of Tom Green, Sr. and disallowed additional amounts claimed, $4,593.18 for 1941 and $4,000 for 1942, as in excess of reasonable *132 compensation for personal services actually rendered by Green. Green was the principal executive officer of Municipal during 1941 and 1942. He devoted a little less than one-half of his time to its affairs during those years. He received, in addition to salary, the free use of an apartment owned by Municipal, in which he lived while in Oklahoma City, and some maid service also supplied by Municipal. A reasonable allowance for compensation for personal services actually rendered by Tom L. Green, Sr. to Municipal during 1941 and 1942 was $6,000 per year. The Commissioner increased income of Municipal for 1941 by $815 described as income from dividends unreported. He explained that the $815 was a taxable dividend from the Retailers Fire Insurance Company rather than a return of capital. Municipal purchased 326 shares of Retailers Fire Insurance Co. stock in 1936 for $2,967.50. The company was then in liquidation. It made liquidating distributions of 22 1/2 per cent in 1937, 15 per cent in 1938 and 1939, 1 1/4 per cent in 1940, and 2 1/2 per cent in 1941. The total amount received by Municipal through those liquidating distributions was $2,934. The $815 received in 1941 was a return of *133 capital and not income to the petitioner. The Commissioner, in determining the deficiencies against Rota-Cone, disallowed commissions of $15,000 for 1941 and $13,000 for 1942 claimed as deductions on the returns. He explained: "It has been determined that no legal liability existed whereby you owed the Municipal Securities Company and the Green Engineering Company and commissions for the taxable year ended December 31, 1941. Inasmuch as you and the two corporations mentioned above are controlled by Tom Green, Sr., commissions claimed in the amount of $15,000.00 have, therefore, been denied as expense deductions. (See Section 45 of the Internal Revenue Code )." An agreement, apparently in the handwriting of Tom L. Green, Sr., dated September 30, 1937, was as follows: "September 30, 1937. "R. Joe Green, S. O. Lewis & Tom L. Green Jr. agree to form a new corporation to go into the oil well conditioning business with The Green Engineering Co. and the Allied Realty & Investment Co. on a joint venture basis as follows: The new corporation and The Green Engineering Co. & The Allied Realty & Investment Co. jointly to take over and pay for the Dunham Engle equipment contract. Allied Realty *134 agrees to loan the joint venture enough money to cover pay rolls, equipment, and material to get the joint venture business started and carry same until the joint venture is able to repay same. The Green Engr. Co. and The Allied Realty agree to exercise their influence and best efforts to secure oil well conditioning work for the joint venture and R. Joe Green, S. O. Lewis, and Tom L. Green Jr. agree that the new corporation will handle all work turned to the joint venture in a satisfactory and business like manner. All joint venture property & profits to be owned: The Allied Realty & Investment Co. 30%, The Green Engineering Co. 25%, The new corporation 45% and all losses to be shared on the same basis and for convenience all joint venture transactions to be carried in the name of the new corporation to be formed. (Signed) R. Joe Green (Signed) S. O. Lewis (Signed) Tom L. Green, Jr. The Green Engineering Co. c/o Tom L. Green, Trustee The Allied Realty & Investment Co. c/o Tom L. Green, Trustee" The incorporators of Rota-Cone were R. Joe Green, S. O. Lewis, and M. Sutley. The record is confusing as to who the stockholders were. Nothing was paid for the shares. R. Joe Green was president, *135 S. O. Lewis, secretary, and Tom L. Green, Jr., vice president of Rota-Cone. Tom L. Green, Sr. received a salary of $5,000 per year from Rota-Cone. Tom L. Green, Sr., representing Green Engineering Co., had done some work for British American Oil Producing Company which, he claimed, had not been fully paid for and he believed that some business could be obtained from that company for Rota-Cone. The record does not show what business, if any, was obtained from that company by or for Rota-Cone. Rota-Cone acquired some equipment on October 1, 1937, which had formerly belonged to Tom Dunham. The record does not show how much money was loaned to Rota-Cone by Municipal. Rota-Cone carried on its business as a corporation during 1941 and 1942 and not as a joint venture on behalf of itself and others. All income received by it was a part of its gross income. The Commissioner did not err in including the $15,000 for 1941 and the $13,000 for 1942 in the income of Rota-Cone. Opinion MURDOCK, Judge: Rota-Cone claimed a deduction of $70,781.86 for "Repairs and Suplies" on its return for 1942. The amount apparently included $4,400 representing charges for renting a truck from Lewis Supply Co. The *136 Commissioner allowed a part and disallowed the remainder of the $4,400. He contends in this proceeding that the $4,400 was not an ordinary and necessary expense since the arrangement between Rota-Cone and Lewis Supply Co. was not a bone fide arm's length transaction. The petitioner has not made a full and convincing disclosure of facts to support a deduction of the entire amount. The Lewis account contains charges for two trucks while the petitioner's witnesses gave explanations relating to only one. Rota-Cone owned and operated a number of trucks of its own. The record contains no reasonable explanation of why it would advance money, purchase a truck for Lewis Supply, furnish a driver for and pay the expenses of the truck, and then pay in one year in rentals for the truck more than the truck cost. The explanations given by Joe Green and S. O. Roach are weak, to say the least. It does not appear that Lewis Supply had any means of paying for the truck except out of rentals received from Rota-Cone. Such charges do not appear to be either ordinary or necessary. The record as a whole does not show that the petitioner is entitled to deduct more in this connection than the $1,209.07 allowed *137 by the Commissioner. The wages of the driver or drivers and the expenses of operating the truck or trucks are not in dispute. Tom L. Green, Sr. testified that he made the investment in the gift shop on behalf of Municipal, and S. O. Roach testified that the money was paid by Municipal. A large part of the money was paid to Joe Lynch who was to buy merchandise for the shop. Tom L. Green, Sr. sued Lynch to recover money paid to Lynch, but finally Lunch was paid additional money on a cross-complaint. It was stated in Green's pleadings in that case that Green had informed Lynch that Green was opening a curio shop in Albuquerque for his daughter to own and operate. Several of the entries in the gift shop account are explained merely with the name of the daughter. Green's pleadings in the suit also contain allegations that some of the money advanced to Lynch was advanced by Municipal and some by Green, personally. Yet the suit was by Green and the whole amount advanced was involved. This record, containing contradictory, inconsistent, and inadequate statements by Green, does not justify a finding that the investments and losses were those of Municipal rather than of Green, as determined *138 by the Commissioner. The losses may have been sustained by Municipal but the real doubt left by this record, the fault of the petitioner, requires an affirmance of the determination of the Commissioner. Green testified that he saved Municipal some money by his services during one or both of the taxable years. Yet the evidence does not show that $6,000 was less than reasonable compensation for his services in each year. He received rent-free housing and some maid service in addition, the value of which is not shown. The Commissioner did not err in disallowing deductions for salary in excess of $6,000 annually. The Commissioner erred in adding $815 to the income of Municipal for 1941 upon the theory that the amount was received as a taxable dividend. Green testified without objection or contradiction that the distributions were in liquidation and did not equal the cost. The account corroborates his statement. Rota-Cone deducted $15,000 and $13,000 on its returns for 1941 and 1942, respectively, as commissions to Municipal and Green Engineering Co. The Commissioner disallowed the deductions. The petitioner no longer claims that the amounts were commissions or that it is entitled to any *139 deductions. Its contention now is that these amounts should be excluded from its income because it was engaged in a joint venture with Municipal and Green Engineering Co. under a written agreement dated September 30, 1937, which provided that Rota-Cone should have 45 per cent of the profits of the "joint venture", Municipal should have 30 per cent, and Green Engineering 25 per cent thereof. Rota-Cone was not a party to the agreement. The record does not show that Rota-Cone ever ratified the agreement. Furthermore, the record not only does not show that the agreement was ever carried out, but it shows that the operations of Rota-Cone were inconsistent with and in disregard of the agreement. It never turned over 30 per cent of its profits to Municipal or 25 per cent to Green Engineering Co. The $15,000 deduction for 1941 was shown as $12,000 commission to Municipal and $3,000 commission to Green Engineering Co., while its net income after those deductions was shown as $12,460.40. It reported net income of $16,282.54 for 1942 after deducting the $13,000. The record does not show how the amounts of $15,000 and $13,000 were determined or what they represent. No accounts were kept to carry *140 the agreement into effect. There is no evidence that the earnings of Rota-Cone were ever split in the proportions specified in the agreement or in amounts approximating these percentages. The petitioner's evidence in support of its present contention is unconvincing in the light of several contradictions and inconsistencies. The existence of the agreement was never shown or made known to the Commissioner prior to the filing of the petition. A revenue agent testified that Tom Green, Sr. told him in 1944, when he was inquiring about the alleged commissions, that they were not paid pursuant to any written agreement. No partnership returns, as required in the case of a joint venture, were ever filed. Section 3797(a)(2), I.R.C. The evidence as a whole does not justify excluding any amount from the income of Rota-Cone upon the theory that it was earnings of a joint venture belonging to Municipal or Green Engineering Co.
The above discussion disposes of all of the issues except alternative ones which need not be considered. Decisions will be entered under Rule 50. Footnotes
*. Original amount included $466.00 for licenses applicable to the taxable year ended December 31, 1943.↩